Jones, Chief Judge,
delivered the following opinion and announced the judgment of the court:
Plaintiff, an officer in the United States Navy, seeks increased allowances for the years June 1, 1944, to December 31, 1955, on the ground that his mother during that period was dependent on him for her chief support.[1]
*143 The term “dependent” is defined in section 4 of the Act of June 16’, 1942, 56 Stat. 359, 361. It provides that the word “dependent” shall include the father or mother of the person concerned “provided he or she is in fact dependent on such person for his or her chief support.”
For a part of the period claimed the Career Compensation Act of October 12,1949, 63 Stat. 802,804, is applicable. This latter act was modified by the Act of September 8, 1950, 64 Stat. 794. These provisions will be discussed later.
The facts are fully set out in the findings. They are in brief as follows:
Plaintiff’s father and mother were born in Germany. However, they came to this country and were married in Baltimore, Maryland, in 1898. They bought two small farms in Kansas which were taken in the father’s name. Plaintiff was the tenth child in a family of twelve. The property has at all times been under heavy mortgage and is “rundown.” The father is a heavy drinker and has not worked for many years. The mother is unable to speak or read the English language. Nine of the children never progressed beyond grade school. Plaintiff worked his way through college and obtained an engineering degree. He is the only child who has been able to contribute financially to the support of his parents. The father’s bank account for the years 1944 to 1955 shows that the balances maintained were very small and at no time exceeded $895.14. The ac *144 count was frequently overdrawn, and the father at all times owed the bank on notes due. Several of the boys were drafted into the Army in the early part of World War II and never returned to the farm. Plaintiff was called to active duty as an officer on March 27, 1942. Only three brothers remained on the farm. One of them became dissatisfied and left in 1946 because he was not paid any wages. Of the two brothers who remained on the farm, one was mentally deficient and the other was an invalid as the result of polio and also as the result of an accident in connection with the operation of a harvester.
Plaintiff’s contributions to his parents began in May 1943. He made application for increased allowances as an officer with dependents and was paid increases for the period from June 1, 1944, to February 28, 1950. Some time during the years 1949 and 1950 the General Accounting Office reviewed the accounts of unmarried officers, including the plaintiff’s accounts. As a result the General Accounting Office decided that plaintiff was not entitled to claim that he had been and was the chief support of his mother. The main basis for this ruling was that the mother was entitled to one-half the income from the farm that stood in her husband’s name, notwithstanding that there were two handicapped children on the farm. The defendant recouped by consecutive deductions the amount of increased allowances that had been paid plaintiff. If the mother had been considered as being allotted one-fourth the income from the farm she would have been dependent on the plaintiff for her chief support during some of the years involved in the instant case.
There are three principal periods. For the period beginning October 1,1949, through July 31,1950, the Career Compensation Act of 1949, supra, was in operation. It required as a condition that the claimed dependent must have resided in the same household. Clearly plaintiff is not entitled to recover any increased allowances for this period.
For the period August 1, 1950, to December 31, 1955, the requirement that the residence be in the same house was repealed but an amendment was added which made the decision of the head of the Department final and not subject to any review except for fraud or gross negligence. There is *145 some confusion in the record as to whether a direct decision was ever made by the Secretary of the Navy. At the same time the record does not disclose that the plaintiff ever filed the necessary additional papers. Whichever horn of the dilemma is taken we have no jurisdiction in the state of the record to make a determination as to this particular period. While for some of those years there is an indication that plaintiff may have been the chief support of his mother, that is a matter, with the exceptions noted, for the exclusive determination of the Secretary of the Navy. Counsel for the defendant indicated that proper application had never been made. It was disputed. At any rate, we have no choice but to dismiss the claim for this period, and it will be dismissed without prejudice.
This leaves for consideration the period of plaintiff’s claim covering the years June 1, 1944, to September 30, 1949. In considering this period we must exclude the year 1949 because in that year, which was evidently a good farm year, it seems apparent that the plaintiff was not the chief support of his mother.
For the years June 1, 1944, to December 31, 1948, we believe it is clearly shown that the plaintiff was the chief support of his mother. The question of whether a mother is dependent upon an officer for her chief support is a factual one and depends altogether on the facts of the individual case. Numerous cases have been cited by both parties, but the law is clear and the statute is clear, and each case must be decided upon the merits presented.[2] Any regulations promulgated under the statute should or should not be applied depending on the circumstances and facts of the individual case and should not be a matter of arbitrary application.
Defendant earnestly insists that one-half the total proceeds of the farm should be allotted to the mother, and that this would preclude plaintiff from recovery. However, there is no exact yardstick that can be used for measurement of cases *146 of this kind. Certainly an allotment of the full one-half would not be justified.
We further conclude, upon a reading of the entire record, that the mother actually received much less than even one-quarter, whatever the family farm income might have been. The two small farms stood in the father’s name, and he controlled the income. He was a heavy drinker. It cannot be reasonably presumed that the liquor was all presented to him. It cannot be presumed that no part of the funds would be used for the support of the two boys who remained on the farm. There is no direct evidence of any substantial portion of the farm income being used for the mother’s support.
One of the family (a married sister) wrote plaintiff on September 16,1945, in reference to plaintiff’s monthly check, “It is the only check that she [the mother] receives. She sure needs the money. She uses it to pay for groceries, medicine and fuel. She should have more medical care. * * * She tries to do too much.” Letters and papers through later years reflect the same story. (See exhibits.)
The mother made an affidavit in 1954 from which we quote: “For years I have had to depend * * * mostly on Anton for all the things I have had. He sends money regularly. * * * I don’t know what my husband did with his money, but I know we never had anything. * * * I don’t know how I would have gotten along without my son Anton. * * * Anton kept me alive.” (Defendant’s exhibit No. 5.) The mother at that time was 81 years of age.
The plaintiff testified that the family lived in poverty, had much sickness and were usually “broke,” that the facts indicate that the net income from the farm was very small, and that apparently a number of expenses that should have been claimed had not been taken as deductions. (Defendant’s exhibit No. 4.)
According to plaintiff’s exhibits 25 to 30 and according to his sworn testimony, he furnished an average of much more than half his mother’s support for the years 1944 through 1948. He admitted it was less than half in the year 1949. He stated that after a question was raised he had made a further detailed study and investigation of the facts with *147 the result as indicated; that amended income tax returns had been filed for the years 1944 to 1949 (plaintiff’s exhibits Nos. 31 to 36, inclusive) correcting numerous errors. They were admitted merely as indicating conditions on the farm. The Collector had ruled they were not timely filed.
Plaintiff stated specifically that the father primarily handled the receipts and that he almost completely excluded the members of his family.
There is no evidence in the record that the father shared the proceeds of the farm with the mother or used any considerable part for her support. All the facts and circumstances of record indicate that very little of this farm’s funds were used for this mother’s support, and certainly less than plaintiff contributed to that purpose during the years June 1, 1944, through December 31, 1948, inclusive.
Plaintiff had no attorney during the admission of the evidence. It was a difficult case for the trial commissioner.
Outside of the estimate based upon an assumption that the mother was entitled to one-half the proceeds of the farm, there is nothing in the record to show that any part of the funds was so used. This is not sufficient to offset the descriptive evidence to the contrary.
At any rate, Kansas is not a community property State. It is our understanding that the father controls the funds from the farms standing in his name. The fact that he paid no direct compensation to any of his sons who worked on the farms, and the mode of life that prevailed there indicate that he was not generous in dealings with his family and, along with other facts of record, justify the conclusion that for the years indicated plaintiff was the chief support of his mother.
The record indicates that the plaintiff contributed considerably more than he has been given credit for. In addition to the regular allotment, plaintiff bought other articles during the period, including a cooking range for $210, and gifts and cash for other items at different times. He even bought a tractor and a plow for the parents’ farm at a total cost of $3,264, but this purchase was made in 1951, which is after the period which is now under consideration.
To deny that plaintiff was the chief support of his mother for the period June 1,1944, to December 31,1948, in the cir *148 cumstances unfolded bere is to run counter to the whole stream of human experience and ignore the basic facts of life.
Here was a case where the father was unable to work. The family lived on a farm in Kansas. The boys who were able to and had been running the farm were drafted into the armed forces or otherwise left and did not return to the farm. Of the three boys who remained on the farm, one was a victim of polio, one was a mental case, and one left in 1946 and did not return.
The returns from the farm according to the GAO report, ranged from a low of $895 to a high of $2,674 per annum, an average of $1,641 per year. This was for a family of four living on a mortgaged farm. The plaintiff contributed $773 per year plus other gifts amounting to an additional substantial amount per year. By the relentless rule of arithmetic defendant has calculated that the mother is entitled to one-half the total farm income, and since this amounts to slightly more than one-half the defendant’s estimate of the living expenses of the family unit, ergo, plaintiff is not the chief support of his mother. This assumes that the mother received one-half all the income from the farming operations, that she used her share of the meagre income from the farm for herself alone and used no part of it to satisfy the needs and hunger of her two unfortunate children, and that she turned her face the other way and refused to heed their acknowledged helplessness.
Shades of arithmetic!
Does any thinking person believe that this Kansas mother, who went down to the crumbling brink to bring these children into the world, would selfishly use all her meagre income for her own support and use no part of it for the care and sustenance of these two unfortunate children? Even the birds of the air and the beasts of the field share their food and protect their young. The lioness feeds her cub and the tiger fights for her offspring. Fancy trying to reason with or quoting arithmetic to one of them while trying to take away one of their young. Nature rears a relentless wall against any such procedure.
*149 It is told that a small country schoolboy in the piney woods of east Texas was studying mathematics. His teacher asked how many in his father’s family. He replied, “Five children and my father and mother.” Then his teacher said, “If your mother cut up a pie and divided it among the family, what part would you get?” The boy replied, “One-sixth.” The teacher, “Why Johnny, you should know better than that. You would get only one-seventh.” The boy, “Teacher you may know your arithmetic, but I know my mother. She would say, ‘I don’t believe I care for any pie.’ ” That is the kind of a mother most of us know about.
We are persuaded to believe that those who made the decision in question were so busy in handling innumerable cases, that they did not have time to stop and face life’s realities, but treated this as a routine incident. That is one of the tragedies of a crowded life.
If this is not true, and they really took time to analyze the circumstances and still adhered to their decision, they need to take time out to lean against a haystack, chew a straw and indulge in a half hour of meditation and see if they cannot find some substance to the human equation which is always present in all the affairs of life.
We find that plaintiff is entitled to recover the additional allowances of an officer with a dependent mother for the period June 1,1944, to December 81,1948, but that he is not entitled to recover for the period from January 1, 1949, to July 31,1950, and as to that portion of his claim his petition will be dismissed. We further find that as to the period from August 1,1950, to December 31,1955, we have no jurisdiction, under the facts disclosed by the record, to determine whether there is merit in plaintiff’s claim for any part of this period; and that in any event the Secretary of the Navy is given authority — in the absence of a showing of fraud or gross negligence — to make a final determination under the law in effect during that time. As to the latter period, August 1,1950, to December 31, 1955, the claim is dismissed without prejudice.
Plaintiff is entitled to recover additional allowances for the period indicated. The amount of recovery will be de *150 termined pursuant to Rule 38 (c). Defendant’s counterclaim is dismissed.
It is so ordered.
Dureee, Judge, concurs.

 For the period June 1, 1944, to July 31, 1950, plaintiff had applied for and had been paid increased allowances on the ground that he was the chief support of his mother.
He filed suit in 1956 for the period from August 1, 1950, through 1955 as a continuing claim. When the defendant filed an answer on January 15, 1957, in which liability was denied, it included a counterclaim In which it asked judgment against plaintiff for sums already paid for the period June 1, 1944, to August 1, 1950. The plaintiff filed a reply denying that the payments for *143 tlie period covered by tbe counterclaim were erroneous. Thus, the issue was joined as to liability for the entire period June 1, 1944, to December 31, 1955.
During the testimony which was taken beginning July 6, 1960, it was revealed that the defendant had deducted $150 per month from plaintiff’s salary for a sufficient time to completely recoup the entire amount that had been paid. Some question was raised as to the state of the pleading, but it was agreed to continue the taking of testimony for the entire period and if any additional pleadings became necessary they could be filed later.
The testimony was taken. Both sides requested findings for the entire period. The trial commissioner made findings for the entire period. The plaintiff filed a brief in which he requested that the pleadings be treated as amended. The defendant filed a reply brief in which it was stated that the issue was for recovery for the entire time June 1, 1944, to December 31, 1955. All the purposes of pleadings have been served. The only reason a question is presented is the action of the defendant in withholding the sums which were otherwise acknowledged to be due the plaintiff for the purpose of recouping the sums sought in its counterclaim.
The issues have thus been clearly made, the evidence has been taken, no one has been misled and the issue is ripe for decision. We are, therefore, treating the pleadings as complete in accordance with the actions taken by all parties.

 Dependent mother: Clarvoe v. United States, 112 Ct. Cl. 330; Reis v. United, States, 112 Ct. Cl. 36; Russell v. United States, 108 Ct. Cl. 363 ; Mogan v. United States, 100 Ct. Cl. 393; Mumma v. United States, 99 Ct. Cl. 261; Thorlin v. United States, 92 Ct. Cl. 61.